Filed 11/14/24  Zipdjian v. Caldin CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| ADRIANA MARIE ZIPDJIAN et al., | B338279 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 23STCV03318) |
| v. | |
| DEBRA G. CALDIN, | |
| Defendant and Respondent. | |
| ADRIANA MARIE ZIPDJIAN et al., | B338470 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 23STPB01707) |
| v. | |
| DEBRA G. CALDIN, | |
| Defendant and Respondent. | |

APPEALS from orders of the Superior Court of Los Angeles County, Jessica A. Uzcategui, Judge.  Affirmed in part and reversed in part.

Law Offices of Jose Mariano Castillo, Jose Mariano Castillo; Madero Legal Group and Gustavo A. Madero for Plaintiffs and Appellants.

Nemecek & Cole and Kenny C. Brooks for Defendant and Respondent.

_____

This is plaintiffs' Adriana Marie Zipdjian's and Patricia Barbara Candela Pintor's (plaintiffs') consolidated appeal from the sustaining of demurrers in civil and probate cases alleging a civil conspiracy between defendant and respondent Debra G. Caldin (Caldin) and Jannette Gianna Breliant (Breliant) without plaintiffs' first obtaining a prefiling order pursuant to Civil Code[1] section 1714.10, subdivision (a).  Plaintiffs are disinherited heirs to an estate for which the defendant attorney Caldin performed legal services for the trustee of the estate, Breliant, including settling a claim between the estate and another defendant who is not a party to the current appeal.

Before a plaintiff may file a cause of action alleging a civil conspiracy between an attorney and his or her client that "aris[es] from any attempt to compromise a claim or dispute," section 1714.10, subdivision (a) requires the plaintiff to obtain a prefiling order upon proof the plaintiff has a reasonable probability of prevailing on that claim.  Failure to obtain a prefiling order can be raised in a demurrer; that defense was successful in the probate and trial court (collectively, the trial

_____

[1] Unspecified statutory citations are to the Civil Code.

court) as to most of plaintiffs' claims against Caldin, not only the conspiracy claims.

On appeal, plaintiffs argue the alleged conspiracy did not arise from an attempt to compromise a claim or dispute. We agree. Liberally interpreting plaintiffs' pleadings as required under our standard of review, plaintiffs allege a conspiracy between Caldin and Breliant to disinherit plaintiffs and direct plaintiffs' inheritance to Breliant. The conspiracy to disinherit plaintiffs and direct their inheritance to Breliant did not arise from "any attempt to contest or compromise a claim or dispute."

## BACKGROUND[2]

Plaintiffs are the daughter and granddaughter of decedent Marie Tasker (Decedent). Decedent died at age 85 in August 2021, and Breliant[3] cared for Decedent at the end of her life. Although plaintiffs named other defendants in their first amended complaint (FAC) and first amended petition (FAP), Caldin (sometimes referred to as defendant) is the only respondent in these consolidated appeals, to wit, from an order sustaining defendant's demurrer to the FAC and an order sustaining a demurrer to the FAP.

### 1.    *Plaintiffs' allegations against Attorney Caldin*

The FAC contains 221 introductory allegations preceding 17 causes of action. In addition to the introductory allegations, the allegations underlying each cause of action are incorporated

---

[2] We must assume the truth of the operative complaint's properly pleaded factual allegations. (*Aghaian v. Minassian* (2020) 59 Cal.App.5th 447, 451, fn. 2 (*Aghaian*).)

[3] Plaintiffs allege Breliant has used many aliases.

3

into each subsequent cause of action. The allegations are interspersed with plaintiffs' characterizations of the evidence and legal conclusions. The prayer for relief spans 14 pages. Thirty-eight exhibits are attached to the FAC.

The FAC identifies Caldin as a defendant in the causes of action for (1) financial elder abuse; (2) intentional interference with expected inheritance; (3) conspiracy to defraud; (4) conversion; (5) constructive trust and equitable lien; (6) declaratory relief; (7) unjust enrichment; (8) money had and received; (9) negligence; (10) malpractice; (11) fraud; (12) constructive fraud; and (13) breach of fiduciary duty.

The trial court described the FAC as follows: "Plaintiffs allege that Ms. Caldin, who initially represented the Decedent Marie Tasker (the 'Decedent') and later represented Jannette Breliant, conspired with Ms. Breliant for the purpose of directing the Decedent's property to Ms. Breliant after the Decedent's death. Ms. Caldin is alleged to have drafted invalid estate planning documents for the Decedent that benefited Ms. Breliant. [Citation.] After the Decedent's death, Ms. Caldin is alleged to have represented Ms. Breliant for the purpose of concealing the allegedly fraudulent and invalid documents. During the course of Ms. Caldin's representation of Ms. Breliant, Plaintiffs allege that Ms. Caldin improperly administered the Tasker Estate in that she failed to contact certain beneficiaries and disinherited heirs. In addition, Plaintiffs allege that Ms. Caldin improperly settled claims by Jeff Kornreich against the Tasker Estate for much more than their fair value, allegedly to buy Mr. Kornreich's silence."[4]

---

[4] Hereafter we refer to Jeff Kornreich as Kornreich.

4

As relevant to this appeal, plaintiffs alleged they were the original beneficiaries of the Marie J. Tasker Trust. A 2017 amendment to the trust directed the distribution in equal shares to each plaintiff. Plaintiffs allege they live in Argentina.

Plaintiffs allege Breliant started caring for Decedent in April 2020. Caldin, an estate planning attorney, met Decedent for the first time in January 2021. "In order to secrete, obtain, misappropriate and distribute Marie's wealth to herself, Defendant Breliant unduly influenced Marie and persuaded her to create new estate planning documents . . . . When Defendant Breliant was convinced that Marie would follow her instructions to disinherit her family, and that Marie would leave the entirety of her estate to her, she found an estate planning attorney for Marie." In 2021, Caldin prepared a "complete set of estate planning documents purportedly at Marie's direction . . . ." "All of these documents named Ms. Breliant as the Trustee, Agent, or Executor, and other than two bequeathments of $25,000 . . . names [Breliant] as the sole beneficiary of Marie's multi-million-dollar estate . . . ." "In the purported 2021 documents, Marie *allegedly* disinherits her daughter and granddaughter . . . ." Breliant "caused and directed the preparation of these documents . . . ." Plaintiffs further allege they did not learn of Decedent's death for 11 months.

Plaintiffs also allege that after Decedent's death, Breliant hired Caldin to assist Breliant "as the Purported Trustee to administer the Trust." "Defendant Caldin was the only attorney that [*sic*] could assist Defendant Breliant because she [Caldin] knew" the estate planning documents were void. Caldin and Breliant failed to notify plaintiffs of the trust distribution "for one purpose, . . . to distribute the Tasker Estate to Defendants, with

5

all but $50,000.00 of the Tasker Estate being distributed to Defendant Breliant." (Boldface omitted.) "Defendant Caldin actively participated, facilitated, and induced the elder abuse of Marie, and the fraud against the rightful beneficiaries of the Tasker Estate, willfully, intentionally" and together they sought "to ensure that the balance of the Tasker Estate would be distributed to Defendant Breliant . . . ." Caldin participated in a conspiracy to commit elder abuse. Caldin "was an active participant, that openly assisted, and induced the fraud in which Defendant Breliant was able to carry out her scheme and artifice to defraud the Tasker Estate . . . ." Caldin intentionally assisted Breliant to take Decedent's estate. "Defendant Caldin and Defendant Breliant have acted in concert with each other to repeatedly unduly influence Marie and commit acts of financial elder abuse." "Defendant Breliant was able to initiate the changes to Marie's estate planning documents specifically with Defendant Caldin . . . so that she could take" Decedent's estate. Plaintiffs alleged Caldin "assisted" Breliant to obtain Decedent's estate and defraud plaintiffs of the estate.

With respect to settlement of the Kornreich claim in January 2022, plaintiffs alleged that upon Decedent's death and on behalf of Breliant as trustee, Caldin negotiated a settlement with Kornreich. Plaintiffs allege Kornreich was Decedent's financial advisor and a beneficiary of the "Sidney and Marie Tasker Family Trust Dated April 23, 1996." Kornreich filed an "action" "pertaining to the amount of his inheritance distribution . . . ." Breliant and Kornreich "settled their dispute over his distribution for $350,000." (Boldface omitted.) Plaintiffs allege this constitutes a "large overpayment" in order to "buy Defendant Kornreich's silence." Plaintiffs allege, "This

6

settlement agreement, entered into between Defendant Breliant and negotiated by her attorney, Defendant Caldin, is further evidence of both Defendant Breliant and Defendant Caldin's malicious, willful, and intentional acts performed to defraud the rightful beneficiaries of the Tasker Estate, and commit, *inter alia*, fraud, elder abuse, intentional interference with an inheritance, and grand theft."

Plaintiffs incorporated all the foregoing allegations against Caldin into each cause of action in the first amended complaint.

Based on essentially the same allegations in their FAP, plaintiffs asserted the following causes of action against Caldin: (1) financial elder abuse; (2) a request for an order invalidating the Marie J. Tasker Trust transfer deed and subsequent transfer deed to the Jannette Breliant Trust on February 24, 2021; (3) order returning assets to the Marie J. Tasker Trust; (4) breach of fiduciary duty; (5) fraud; (6) order awarding monetary penalties; and (7) order imposing constructive trust.

### 2. *Caldin Demurrers to Both the FAC and FAP Based on Section 1714.10 and Plaintiffs Oppose the Demurrers*

Caldin demurred to the entire FAC and FAP based, *inter alia*, on section 1714.10.

In her demurrer to the FAC, Caldin argued, "Plaintiffs allege that, by negotiating the Kornreich Settlement, Breliant and Attorney Caldin engaged in a 'conspiracy to commit elder abuse' among other things" and "[t]hese allegations are thereafter incorporated into every cause of action alleged against Attorney Caldin." Caldin argued those allegations triggered the prefiling requirement under section 1714.10 and because plaintiffs failed to comply with that requirement, the court should sustain the

7

demurrer.  Caldin made the same argument in her demurrer to the FAP.

In their opposition to the demurrers, plaintiffs' argued section 1714.10 was inapplicable where an attorney has an independent duty.  Section 1714.10, subdivision (c) provides: "This section shall not apply to a cause of action against an attorney for a civil conspiracy with his or her client, where (1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain." (§ 1714.10, subd. (c)).  Plaintiffs also argued Caldin was not Breliant's attorney when the conspiracy started at the time Caldin prepared invalid documents for Decedent.  Plaintiffs made the same arguments in opposing Caldin's demurrer to the FAP.

3.  ***Largely Based on Section 1714.10, the Trial Court Sustains Caldin's Demurrers as to Plaintiffs' Causes of Action***

The trial court sustained the demurrers to the FAC and FAP but allowed leave to amend "as to the exceptions in section 1714.10(c) only."  "The Court finds that all of the actions alleged during Ms. Caldin's representation of Ms. Breliant fall clearly within the scope of section 1714.10, as they allege a conspiracy between an attorney (Ms. Caldin) and her client (Ms. Breliant).  As to the actions alleged during Ms. Caldin's representation of the Decedent (i.e., the preparation of allegedly invalid estate planning documents), the Court finds that these allegations are all part of a conspiracy with a single aim, to distribute the bulk of the Decedent's assets to Ms. Breliant."  It appears the trial court did not determine whether the alleged conspiracy "aris[es] from

8

any attempt to contest or compromise a claim or dispute . . . ." (§ 1714.10, subd. (a).)

Based on section 1714.10, the court sustained the demurrer as to the following causes of action in the FAC: financial elder abuse, intentional interference with expected inheritance, conspiracy to defraud, conversion, judgment and order imposing constructive trust and equitable lien, declaratory relief, unjust enrichment, money had and received, fraud, and breach of fiduciary duty. Based on the same statute, the court sustained the demurrer as to the following causes of action in the FAP: elder abuse and order returning assets to the Marie J. Tasker Trust. The court sustained the demurrer to the remaining causes of action on other grounds, which are not challenged on appeal.

Plaintiffs timely appealed from the order sustaining the demurrer to the FAC and separately timely appealed from the order sustaining the demurrer to the FAP. We consolidated the cases for purposes of appeal.

## DISCUSSION

### A. Scope of the Appeal

In their opening briefs on appeal, plaintiffs assert that the consolidated appeals are from orders sustaining demurrers "under Civil Code[ ] section 1714.10" and the appeals are "authorized" by section 1714.10, subdivision (d). In their legal argument, plaintiffs challenge only the trial court's application of section 1714.10.[5] Our review is limited to the issues "adequately

---

[5] Caldin raised other arguments in her demurrers, which are not at issue on appeal. With respect to the FAC, the trial court found the causes of action for negligence and malpractice

9

raised and supported" in plaintiffs' opening briefs.
(*WA Southwest 2, LLC v. First American Title Ins. Co.* (2015)
240 Cal.App.4th 148, 155.)  We may consider on appeal the sole
issue plaintiffs' raise—whether the trial court properly applied
section 1714.10.  (§ 1714.10, subd. (d) ["This section establishes a
special proceeding of a civil nature.  Any order made under
subdivision (a), (b), or (c) which determines the rights of a
petitioner or an attorney against whom a pleading has been or is
proposed to be filed, shall be appealable as a final judgment in a
civil action."].)

## B.    Standard of Review

We review the trial court's order de novo sustaining the
demurrer.  (*Klotz v. Milbank, Tweed, Hadley & McCloy* (2015)
238 Cal.App.4th 1339, 1349.)  "[W]e give the complaint a
reasonable interpretation, reading it as a whole and its parts in
their context."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318;
*Aghaian*, *supra*, 59 Cal.App.5th at p. 451, fn. 2.)

## C.    Section 1714.10

Certain conspiracies between an attorney and his or her
client are subject to a prefiling requirement.  Section 1714.10
currently provides in pertinent part:  "No cause of action against

---

fall outside the scope of section 1714.10's scope "because they
assert an independent basis for liability against Ms. Caldin."  The
court sustained defendant's demurrer to those causes of action on
grounds unrelated to section 1714.10.  With respect to the FAP,
the court sustained Caldin's demurrer to causes of action for
breach of fiduciary duty, fraud, order for monetary penalties, and
order imposing constructive trust and equitable lien on grounds
other than section 1714.10.

an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action. . . ." (§ 1714.10, subd. (a).)

Section 1714.10 was originally enacted in response to *Wolfrich Corp. v. United Services Automobile Assn.* (1983) 149 Cal.App.3d 1206. (*Pavicich v. Santucci* (2000) 85 Cal.App.4th 382, 390 (*Pavicich*).) In *Wolfrich*, the trial court entered judgment on the pleadings and the issue on appeal was whether plaintiffs stated a cause of action against an insurance company's attorneys for conspiracy to violate a statute requiring an insurance company to make prompt settlement after liability has become reasonably clear (Ins. Code, § 790.03, subd. (h)(5)). (*Wolfrich*, at p. 1208.) *Wolfrich* held, "Attorneys may be liable for participation in tortious acts with their clients, and such liability may rest on a conspiracy." (*Id.* at p. 1211.)

"Former section 1714.10 narrowed *Wolfrich* by protecting against frivolous conspiracy claims brought against attorneys and their clients. The statute achieved this goal by requiring a prefiling judicial determination of a reasonable probability that the conspiracy claim was meritorious. 'Both houses of the Legislature expressed concern over use of such claims as a tactical ploy, particularly in actions against insurance companies.' [Citation.]" (*Pavicich*, *supra*, 85 Cal.App.4th at pp. 390–391.)

11

Subsequent to enactment of section 1714.10, our Supreme Court in *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 41–42 overruled *Wolfrich,* holding that "a conspiracy cause of action cannot lie 'if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing and was acting only as the agent or employee of the party who did have that duty.' [Citation.]" (*Pavicich, supra,* 85 Cal.App.4th at p. 391.) After *Doctors' Co.*, the Legislature amended section 1714.10 to read in its current iteration. (*Pavicich*, at pp. 393–394.) Pertinent to this appeal, the 1991 amendment added that the conspiracy must arise "from any attempt to contest or compromise a claim." (Stats. 1991, ch. 916, § 1.)

In order to determine whether section 1714.10 applies to plaintiffs' conspiracy allegations, we first determine the nature of the conspiracy alleged in the FAC and FAP—an issue on which the parties disagree. We then address whether section 1714.10 applies to that conspiracy.

## D.    Plaintiffs Allege That Caldin Conspired with Breliant To Disinherit Plaintiffs and Bequest Decedent's Estate to Breliant

Defining the scope of the conspiracy is dispositive of this appeal. Appellants argue, Caldin and Breliant "conspired . . . to commit acts of fraud to take all but $50,000 of Marie's $3,000,000 estate" and that it commenced when Caldin met Decedent in 2021. According to plaintiffs, preparation of allegedly invalid estate planning documents, concealing Decedent's death, and administering the trust were acts that permitted Breliant to effectuate the goal of that conspiracy and inherit Decedent's assets. Further, according to plaintiffs, administration of the

12

trust included settlement of Kornreich's claim in a manner that required his silence.

Defendant defines the conspiracy narrowly. Defendant argues, "Plaintiffs' allege that, by negotiating the Kornreich Settlement, Breliant and Attorney Caldin engaged in a 'conspiracy to commit elder abuse' among other things. [Citation.] These allegations are thereafter incorporated into every cause of action alleged against Attorney Caldin" and compel the requirement of a prefiling order. For support, defendant cites to only a few paragraphs in the pleadings and ignores the bulk of the allegations describing Caldin's conduct in connection with Decedent's estate.

A conspiracy cause of action is a " 'mechanism for imposing vicarious liability; it is not itself a substantive basis for liability. Each member of the conspiracy becomes liable for all acts done by others pursuant to the conspiracy, and for all damages caused thereby.' [Citation.]" (*Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 206.) " ' "[T]he basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act." [Citations.] The conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose. [Citations.] [¶] However, actual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim. Knowledge of the planned tort must be combined with intent to aid in its commission.' [Citation.] Knowledge and intent ' " may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances." ' [Citation.]" (*Ibid*.)

13

"A party seeking to establish a civil conspiracy 'must show that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it. [Citation.] . . . .' [Citation.]" (*AREI II Cases* (2013) 216 Cal.App.4th 1004, 1022.) An overt act is a "wrongful act[ ] in furtherance of a conspiracy to harm another . . . ." (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 787.) "[T]he gist of the tort [of conspiracy] is the damage resulting to the plaintiff from an overt act or acts committed pursuant to the common design." (*Michael R. v. Jeffrey B.* (1984) 158 Cal.App.3d 1059, 1069, italics omitted.)

The parties do not dispute that the allegations of fact contained in the complaint and petition must be accepted as true for purposes of review. (*Cellular Plus, Inc. v. Superior Court* (1993) 14 Cal.App.4th 1224, 1231.) These pleadings, when considered as a whole, do not support defendant's narrow definition of the alleged conspiracy, that is, "a conspiracy between Attorney Caldin and Breliant . . . aimed at compromising a controversy with Kornreich—*i.e.*, the Kornreich Settlement." As alleged, the conspiracy's goal was to disinherit plaintiffs and leave Decedent's estate to Breliant. The allegations in the pleadings support the inference that a dispute with Kornreich did not even exist when Breliant and Caldin initially planned to disinherit plaintiffs—the common design plaintiffs' allege. Instead, the settlement of the dispute occurred more than a year after Caldin met with Decedent to revise her estate planning documents and thus, the settlement is better characterized as an overt act in furtherance of the conspiracy, not as *the common plan* of the conspiracy.

Our conclusion is consistent with the trial court's description of the conspiracy as one "for the purpose of directing the Decedent's property to Ms. Breliant after the Decedent's death." Our conclusion is also consistent with defendant's statement elsewhere in her brief that "Plaintiffs allege that Attorney Caldin improperly conspired with . . . Breliant . . . , the successor trustee subsequently represented by Attorney Caldin, to bring about the changes to Decedent's estate plan that Plaintiffs now challenge."

### E. The Alleged Conspiracy Does Not Fall Within the Ambit of Section 1714.10

No party argues that a conspiracy to disinherit plaintiffs falls within the ambit of section 1714.10. And the plain language of the statute requires a conspiracy "arising from any attempt to contest or compromise a claim or dispute . . . ." A conspiracy to disinherit plaintiffs does not arise from an attempt to compromise a claim or dispute. (§ 1714.10, subd. (a).) Therefore, based on the plain language of the statute, we conclude section 1714.10 does not apply to the conspiracy plaintiffs alleged in the FAC and FAP.

*Stueve v. Berger Kahn* (2013) 222 Cal.App.4th 327 (*Stueve*) supports our conclusion. In *Stueve*, plaintiffs sued, among others, a lawyer and law firm for "a purported Ponzi scheme . . . to siphon off the assets of the Stueve family . . . the 'heirs' (in lay terms) to the Alta Dena Dairy fortune." (*Id*. at p. 329.) Relying on section 1714.10, the trial court granted the law firm's motion to strike the conspiracy allegations. (*Stueve*, at p. 329.) The appellate court reversed, holding that claims arising from the "siphoning off of assets through fraudulent estate planning, including the misappropriation of [the plaintiffs'] assets through

15

the diversion of those assets to entities created and controlled by the defendants" do not describe a conspiracy requiring a prefiling order pursuant to section 1714.10, subdivision (a). (*Stueve*, at p. 331.) "As is plain from the face of the statute, '[s]ection 1714.10 prohibits the unauthorized filing of an action for nonexempt civil conspiracy against an attorney based on conduct arising from the representation of a client that is in connection with any attempt to contest or compromise a claim or dispute.' [Citation.]" (*Stueve*, at p. 331.) Transactional activities are not " 'arising from any attempt to contest or compromise a claim or dispute.' " (*Ibid*.)

Similarly here, the alleged conspiracy to disinherit plaintiffs and leave Decedent's estate to Breliant did not arise from any attempt to contest or compromise a claim or dispute.[6] Similar to *Stueve,* plaintiffs allege that Caldin and Breliant conspired to deprive them of their inheritance and divert the estate to Breliant, decedent's caretaker.

_____

[6] Because we have concluded that section 1714.10 is inapplicable based on the plain language of subdivision (a), we need not address whether exceptions contained within the statute apply. (*Stueve*, *supra*, 222 Cal.App.4th at p. 333.)

We acknowledge that in their opening briefs, plaintiffs make additional arguments challenging the trial court's application of section 1714.10. Because we conclude that statute is inapplicable on its face, we do not address those other arguments.

We also have rejected defendant's premise that every cause of action "alleged against Attorney Caldin arises (in significant part) from a conspiracy . . . aimed at compromising a controversy with Kornreich." We need not address defendant's arguments that flow from that incorrect premise.

16

## DISPOSITION

The trial court orders sustaining Debra G. Caldin's demurrer are reversed only insofar as they are based on Civil Code section 1714.10. In all other respects the orders are affirmed. Plaintiffs shall have their costs on appeal.

NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

WEINGART, J.

KLATCHKO, J.*

---

* Judge of the Riverside County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17